By the Court.—Monell, J.
I do not think it necessary in this case that it should be determined where the power resides to appoint a deputy chamberlain of the city, whether in the chamberlain or in the comptroller.
The consideration of that question would be, in effect, the trial of the title to the office, which cannot be done in so collateral or incidental a manner.
The provision made by law for the trial of such questions is exclusive and not cumulative. Whenever it is alleged that a person has usurped a public office, the attorney-general is authorized to institute an action, on *17 behalf of the people, to try the right of such person to the' office (Code, § 432). And in such action the right of any other claimant to the office may also be determined (Id. § 436). These provisions furnish the only remedy for the trial and determination of such questions, and they prohibit their trial in any other manner. This is established by many cases (Hall v. Luther, 13 Wend. 491; People v. White, 24 Id. 525 ; Mayor v. Tucker, 1 Daly, 107 ; Tappan v. Gray, 9 Paige, 507).
In the last case cited, which was affirmed by the court for the correction of errors (7 Hill, 259), the power of the court to try the question, even as a means of affording some other relief, was examined, and the chancellor says that jurisdiction ought not to be assumed to oust an officer from an office held under the color of title “until his right to such office has been settled in the mode prescribed by law.”
Walter B. Palmer received his appointment as deputy chamberlain from the chamberlain, who assumed, at least, to possess the power to make.the appointment. He tookpossession of the office and has since discharged its duties. This gave him sufficient color of title to constitute him the de facto deputy, entitling him to hold the office until ousted by the judgment of the court (Parker v. Baker, 8 Paige, 428). And being in possession he is presumed to hold de jure also.
If. the relief, therefore, which is sought in this action depended upon its being first determined that Palmer was not legally appointed to the office, it could not be ; obtained. His title to the office cannot be determined j in this way.
But the action is instituted by the person who is the incumbent of the office of chamberlain, not eo nomine, but under the allegation that he is the chamberlain, in possession of the office, exercising the powers and discharging the duties appertaining to it, and that, claiming to possess the requisite power, he had appointed *18 said Palmer to "be deputy chamberlain, who, as such deputy, had taken possession of the office, and had entered upon the discharge of its duties.
It is then alleged that the defendant had intruded upon, and had attempted to take possession of the same office, and had demanded his recognition as the deputy of the chamberlain, and had declared his intention to exercise the powers and discharge the duties of the office, notwithstanding the refusal of the plaintiff to recognize his right to do so.
The relief demanded is that the defendant be restrained from intruding into the office, and from exercising any of its functions, until (for such is the only effect of the injunction) his right to the office has been established by law.
The allegation in the complaint, of the appointment of Palmer by the plaintiff, and the denial by the defendant of such appointment, or of any power in the plaintiff to make the appointment, and the additional averment that the defendant was the legally appointed deputy chamberlain, do not confer any power on the court to try the question of title.
Such right cannot be determined in this action; nor, as I understand the plaintiff s prayer for relief, to require the court to make such determination, the prayer being merely that,the defendant be prevented from intruding into the office until his right to it has been determined in a proper action.
It is alleged that, upon the plaintiff’s refusal to recognize the defendant as the deputy chamberlain, the latter gave notice and proclaimed “that he intended, at all events, to exercise the duties and powers of the office.”
From this it naturally follows, as a proper implication, that the defendant intended, in performing his official duties, to occupy a portion of the chamberlain’s apartments, and to use such of the books and papers therein as he might require.
*19 The intrusion, therefore, which is sought to be prevented, is not a mere constructive or technical taking possession of the office, but a physical or manual entering by the defendant into the apartment assigned to and occupied by the city chamberlain, and taking possession of one of the desks therein, and thus attempting to exercise the powers and discharge the duties of deputy chamberlain.
It cannot be doubted, I think, that a similar intrusion by a stranger into the apartment occupied by a public functionary would properly be regarded as a trespass, justifying the incumbent of the office in removing such stranger therefrom ; and in doing so to use, if necessary, such reasonable force as might be required.
There is a responsibility resting upon every public officer for the preservation and safety of the books, records and other property committed to his custody and care, which give him the right in protecting such property to exclude persons from his apartments who improperly, either in point of time or manner, attempt to interfere with the custody of such property or with the orderly discharge of his official duties.
A public office is not so entirely public property that all citizens have an equal right to enter into and occupy it. The incumbent of the office is the agent of the people, clothed with authority to exercise certain powers and to discharge certain duties for their benefit, and for that purpose is intrusted with and held responsible for the care and safety of the public property. And although the public may, for the 'transaction of business, enter a public office and have reasonable access to the public records, books and papers, such right, nevertheless, must necessarily and very properly be subordinated to the power and control of the official in whose custody the public has placed such property. And in the proportion that the responsibility of the official is greater, must his power be increased. This is peculiarly *20 so with officers who are the custodians of the public-treasure.
It would be most unsafe to allow a miscellaneous intrusion into his office, or any unwarranted interference with the discharge of his duties ; and he should, therefore, be clothed with all requisite authority to exclude and prevent any such improper or unlawful intrusion or interference with it.
It is not inapt to say of the chamberlain’s office that it is one of high, and peculiar responsibility and importance. The whole city treasury is in his custody, amounting annually, as is alleged, to at least fifty millions of dollars; for the safety of which, and its-legal disbursement, the chamberlain is accountable.
For the protection of this large sum, and its legal disbursement, the city chamberlain has peculiarly strong-claims upon the law, and has the right to be not interfered with, except upon the most justifiable grounds, and then only .in the mode prescribed by law.
And, in this connection, it is proper to say that the office of deputy is made by statute equal to the superior officer during his absence or inability to act (Laws of 1866, chap. 623), the law clothing the deputy with all the powers possessed by his superior, and rendering the office one of peculiar importance.
If, as I believe, the power exists as to a stranger, and if in this case the public official may, for the protection, of his office, justly exclude such person from attempting to usurp any o'f its functions, then it follows, I think, that the right to exclude the defendant in this-case from entering into the apartments officially occupied by the plaintiff must be recognised. The appointment of the defendant to the position of deputy chamberlain by an authority not recognized or admitted by the plaintiff, does not of itself, or necessariíy, confer upon Mm any such right of office which, as between himself and the principal officer, could change their relations.
*21 The defendant is not in possession of the office. He is not, therefore, de facto deputy, and clearly he cannot, for the purpose of this action, be considered a de jure deputy, nor probably a deputy in any aspect, until his right to the office has been established in the manner provided by law. The defendant, therefore, cannot claim any right or privilege growing out of his alleged appointment, and he stands in no better attitude than a mere stranger, except that he may invoke the aid of the attorney-general to proceed against the present incumbent to try the title of the office. But at present he cannot have possession of the office, nor can he enforce a recognition of himself as the legally constituted officer. He must wait until the disputed question is determined in his favor by a judgment in a proper action.
This view of the defendant’s position and rights is, I think, fully maintained in the following cases: Conover v. The Mayor of New York, 5 Abb. 393; Matter of Welch, 14 Barb. 396 ; Devlin’s Case, 5 Abb. 281; Matter of Davis, 19 How. Pr. R. 323 ; Mott v. Donnelly, 50 Barb. 516, where other cases are cited ; Matter of Davis, 19 How. Pr. R. 323.
This question is not affected by the provision of the Eevised Statutes (1 R. S. 125, § 50, etc.) conferring power on the court to require the delivery of books and papers to a successor in office. Yet, even under that statute, the court cannot try the title to the office (People v. Allen, 42 Barb. 253), but may make an order for the delivery of the books upon a primd-facie case of right in the plaintiff, leaving, however, the question of title undisturbed.
Under this inability, therefore, to try the title to the office in this action, the defendant must be regarded as having no other, further, or greater right than any other ■«citizen; and his acts, in reference to the office he claims, must be subjected and subordinated to the power which *22 the chamberlain possesses to protect the office from any improper intrusion.
In this view of the rights of the respective parties, the only question, therefore, is, can an injunction, which has-for its purpose the restraining of the defendant from entering upon, interfering with, or assuming the duties of the disputed office be sustained ? That the plaintiff,, as the responsible custodian of the treasury of the city, and of the office in which his official business is transacted, and of the books and papers connected therewith, could properly exclude the defendant therefrom ■ and with force, if necessary, prevent the usurpation of the office, or that he could demand the aid of the civil authority to protect the office from any unwarrantable intrusion, will not, perhaps, be doubted. But it may be questioned if that is not the only remedy the plaintiff can command.
The plaintiff desires that he and the person he has appointed as his deputy may be undisturbed in the office they occupy and claim legally to fill; and instead of asserting his right by bringing to his aid the maxim of the law “ domus sua migue est tutissimus refurgium,” he has adopted a measure more conformable to-peace and order.
The earliest jurisdiction, if not at that time the chief business of the court of chancery, was in assaults, trespasses, and a variety of outrages, which, although cognizable at common law, the party complaining was unable to obtain redress in consequence of the protection afforded to his adversary by some powerful baron or high officer of the county in which the acts occurred (1 Cooper Pub. Rec. 359 ; 1 Story Eq. § 48). And the judisdiction, in cases of trespass to property, has been continued to the present time (2 Story Eq. § 928), and is sustained upon the principle of irreparable mischief, a principle which has since been incorporated into the Code (Code, § 219).
*23 No exact limit is placed upon the jurisdiction in this class of cases. The complainant must have been in the previous undisturbed enjoyment of the property under a claim of right, and it must appear that the relief at law is inadequate.
If the relief consists in restraining the continuance of some act of the defendant, there is no line marked out by any adjudged case to which the jurisdiction must be confined ; and from the nature of things, it must forever remain undefined (Willard' s Eq. Jur. 408).
There is no want of analogy between trespass to property and to the person, or to a personal right in respect to the claim for protection.
In respect to the use of preventive process, the jurisdiction ought to be, and therefore is, the same; and if it is proper in one case to exercise the jurisdiction to prevent a wrong threatened to be done to mere property, how much more proper is it to use the same power to arrest premeditated wrong to the person or personal rights ?
The object of the process of injunction is both preventive and protective. It seeks to prevent a meditated wrong, and not to redress an injury which can usually be done only at law, and then to protect a party against any unlawful invasion of his rights.
The mere novelty of the action, or that the relief sought is possibly without precedent, is not, in my judgment, sufficient to defeat it, if there is principle to sustain it; and I think it should be sustained upon the principle that it is a proper substitute for another remedy, which, had it been adopted, might have produced confusion and disorder in a public office, and perhaps serious loss to the city, if not to the immediate parties concerned.
The course of the plaintiff should, I think, therefore be commended and sustained, and his action not be dismissed because he has thought it proper to apply to the *24 court to protect him in his office against what he claims is an attempt at an unwarrantable intrusion.
In The Mayor, etc., v. Flagg, 6 Abb. 296, a controversy arose between two rival claimants of a municipal office. Pending an action to try the title to the office, the Mayor, etc., obtained an injunction restraining the comptroller from recognizing the acts of either, and each from acting or asserting any claim against the city.
The injunction was sustained on the ground that it was right to come to the court for protection from the conflicting claims until the right to the office had been obtained by one or the other.
In Tyack v. Bromley, 4 Edw. Ch. R. 258, which was a controversy between different persons claiming the same office, the complainant alleging that the defendants had attempted to usurp. the office, the latter were restrained from interfering with the complainant’s duties.
The vice-chancellor, in sustaining the jurisdiction of the court, says (p. 270): “ Courts of justice are bound to aid a party in possession of rights, whether they be natural or artificial, or such as are mere creations of law, whenever those rights have been infringed or their destruction threatened. It is a familiar head of equity jurisdiction to protect by injunction statutory rights and privileges which are threatened to be destroyed or rendered valueless to the party by the unauthorized interference of others; and although it was not proper for equity to restrain in the first instance where there was doubt, yet it would do so without requiring the establishing of the right at law where a clear case of common-law right was presented, and the party is in possession and enjoyment of the right which is threatened to be destroyed or rendered valueless.’ ’
For these reasons it was right, I think, for the plaintiff to come to the court and demand an injunction restraining the defendant from exercising or attempting to *25 exercise the functions of his alleged office, until his right to the office had been duly established.
I am, therefore, in favor of sustaining the injunction. But as the defendant’s counsel claimed that the injunction restrained him from trying the question of title in any action, it should be modified (if the defendant desires it) so as to allow the bringing of an action to try the title to the office.
The order appealed from, thus modified, should be affirmed, with costs.
Freedman, J., concurred.