WARD, Appellant, vs. SWEENEY, City Clerk, and others, Respondents.

*February 5 — February 27, 1900.*

*Temporary injunction: Discretion: Restraining intrusion into office: Pleading: Aldermen: Term of office.*

1. The refusal of an injunction *pendente lite* is a matter resting in sound discretion.

2. A court of equity cannot try the title to a public office; and if it may by injunction protect the incumbent of an office against violent disturbance or usurpation by a claimant thereof, the case should be clear and urgent to justify such intervention.

3. The refusal of an injunctional order in an action by an alderman against persons claiming to be aldermen-elect is *held* not to have been an abuse of discretion, it appearing that the relief sought was merely the keeping of defendants out of office until their right should be legally established; that it was not probable that there would ever be any judgment in the case to be rendered unavailing in the absence of a temporary injunction; and that the injury to plaintiff or any one else from a change in the *status quo* would in no respect be greater than the injury to defendants and to the public from the temporary injunction should defendants' title ultimately be established,— the injury in either event being incapable of being measured in money so as to be protected by an undertaking; and it not being shown by the complaint that there was any real peril of turbulent or riotous disturbance of the orderly proceeding of the city government, and not clearly appearing that the defendants were not entitled to the offices claimed. *Valley Iron Works Mfg. Co. v. Goodrich,* 103 Wis. 436, distinguished. MARSHALL and BARDEEN, JJ., concur in the decision on the sole ground that it does not clearly appear from the complaint that the plaintiff was entitled to the office, and dissent from the opinion of the court in so far as it casts doubt upon or attempts to limit the power of a court of equity to protect a *de facto* officer in office from an intruder.

4. It is as pleadings that allegations are to be liberally construed, not as assertions of fact to support injunctions. For the latter purpose they should be carried no farther than the necessary force of their words, and in weighing them the court may use its knowledge of the counsel who prepared and the party who verified them.

Ward vs. Sweeney and others.

5. How far the general provision of sec. 925—26, Stats. 1898, that alder-
men shall hold office for two years, applies to the first aldermen
of a city, elected after the beginning of the electoral year, and
whether the word "year" in that connection means calendar year
or electoral year, i. e. a period terminating with the third Tuesday
in April following the regular time of municipal elections (sec.
925—28), not determined.

APPEAL from an order of the superior court of Milwaukee
county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

The city of the fourth class of South Milwaukee became
such by virtue of sec. 98, ch. 287, Laws of 1897, it then being
a village of more than 1,500 inhabitants. After receiving its
patent, municipal election was held on the 30th day of June,
1897, and the aldermen then elected qualified as such, and
entered upon their duties on the 6th day of July, 1897. At
the time of the regular municipal elections in April, 1899,
an election for aldermen was held, and a new set elected,
who claimed their right to occupy the office on the third
Tuesday in April following such election.

The plaintiff, one of the old aldermen, on behalf of him-
self and the other aldermen, commenced suit by service of
a complaint, which alleged the foregoing facts, and that the
defendant *Sweeney*, the city clerk, claims and pretends that it
is his duty to deliver certificates of election in pursuance of
said election, and that said aldermen insist that upon receipt
of said certificates they will qualify and take their places
as elected; that by reason of the premises there is a conflict
of claims as to who are and constitute the rightful aldermen
from and after the third Tuesday in April, and that the
aldermen, if they receive their certificates of election, will
intrude into the common council, and attempt to occupy
the seats therein and to exclude the members now sitting,
which acts plaintiff claims will be illegal and wrongful, and
will provoke dissension and altercation among the citizens,
obstruct public business, disturb the peace and quiet of the

residents of the city; and the plaintiff and other aldermen will sustain great and irreparable damage. The prayer is for an injunction, first, against defendant *Sweeney*, city clerk, enjoining him from issuing certificates of election; also against the several newly elected aldermen, enjoining and restraining them "from intruding into the office of aldermen, and from acting, or attempting to act, in that capacity during the terms of the aldermen now sitting."

Upon this complaint the plaintiff obtained an order to show cause, returnable before the Honorable JOHN C. LUD-WIG, judge of the superior court of Milwaukee county, why, pending the litigation, the said defendant *Sweeney*, as city clerk, should not be restrained from issuing certificates of election to any of the newly elected aldermen, and why the aldermen themselves should not be restrained from intruding into the offices of aldermen of the city of South Milwaukee, or attempting to act as aldermen. Upon a hearing on the complaint said orders to show cause and the accompanying restraining orders were, by the superior court, "discharged and vacated, the plaintiff taking nothing thereby." From that order this appeal was brought.

For the appellant there was a brief by *Kelly, Kelly, Henning & Riley*, and oral argument by *John T. Kelly*. Where a constitutional provision or statute fixes a term of office at two years and until a successor is elected and qualified, such term cannot be reduced to less than two years. *State ex rel. Gibson v. Friedley*, 21 L. R. A. 634; *Atkins v. Fraker*, 32 Wis. 510; *Platteville v. Bell*, 66 Wis. 326; *Crovatt v. Mason*, 101 Ga. 246; *State ex rel. Williams v. Mayhew*, 21 Mont. 93; *State ex rel. v. Bader*, 58 Ohio St. 384. An injunction should be issued to protect actual incumbents of office in the exercise of their official rights and to prevent others from interfering until the title can be determined in a proper proceeding. Mechem, Public Officers, § 994; *Eckelkamp v. Schrader*, 45 Mo. 505; *Allen v. Dunlap*, 24 Oreg. 229; *Corning v.*

Ward vs. Sweeney and others.

*Troy 1. & N. Factory,* 40 N. Y. 191; *Broiestedt v. South Side R. Co.* 55 N. Y. 220; *Pioneer W. P. Co. v. Bensley,* 70 Wis. 476; *State ex rel. Jones v. Oates,* 86 Wis. 634; *Parsons v. Durand,* 150 Ind. 203; 10 Ency. Pl. & Pr. 891.

For the respondents there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.* An equity action is not a proper proceeding in which to test the title of the defendant aldermen to their offices. *Huels v. Hahn,* 75 Wis. 468; *Demarest v. Wickham,* 63 N. Y. 320; *In re Sawyer,* 124 U. S. 212; *Appeal of Gilroy,* 100 Pa. St. 5; *Osgood v. Jones,* 60 N. H. 543; *Cochran v. McCleary,* 22 Iowa, 86; *McDonald v. Rehrer,* 22 Fla. 198; *Muhler v. Hedekin,* 119 Ind. 481, 486; 3 Pomeroy, Eq. Jur. (2d ed.), § 1345; 2 High, Injunctions (3d ed.), § 1312; *Smith v. Myers,* 109 Ind. 1; *Sheridan v. Colvin,* 78 Ill. 237; *Poyer v. Des Plaines,* 123 Ill. 111; *Beebe v. Robinson,* 52 Ala. 66; *Moulton v. Reid,* 54 Ala. 320. If injunction were the proper remedy the plaintiff is not entitled to it for the reason that the facts alleged by him show that the defendant aldermen are entitled to the offices. Secs. 925—16, 925—26, 925—28, Stats. 1898; Mechem, Public Officers, § 390; Throop, Public Officers, § 308; *Wright v. Adams,* 45 Tex. 134, 140.

DODGE, J. It is primarily contended by the respondents and conceded by the appellant that a court of equity cannot try the title to public office, and appellant insists that his action may be maintained as one to merely enjoin a public disturbance or an unseemly interference with those in fact exercising the duties of an office. The prominent facts alleged and the relief prayed are all of the former character. The contesting claims to the office are alleged, and the relief prayed is the enjoining of the city clerk from issuing certificates of election, and the enjoining of the aldermen-elect from intruding into the office "during the term of the aldermen now sitting." Neither of these forms of

relief would be justified by anything short of an adjudication that the defendant aldermen had not been lawfully elected to the office. The relief to which plaintiff might have been entitled upon the cause of action he now seeks to construe out of the complaint would not have included any injunction against the city clerk from issuing election certificates, and could only have included injunction against the aldermen-elect until their title to the office had been established by law. That is the utmost extent to which any of the authorities cited by appellant extend, namely, to justify the maintenance of an original suit in equity for an injunction pending legal proceedings and ancillary thereto. We need not, however, decide whether or not there may be facts alleged to justify some form of injunctional relief other than that demanded, for the case comes here, not upon demurrer, but on an appeal from the refusal of an injunction *pendente lite*, an order resting in the sound judicial discretion of the court below. Neither is it necessary to decide whether, in any case, a court of equity may intervene by injunction to protect one or the other of contending claimants for an office in possession and enjoyment thereof. On that subject the states differ radically. Some of the more leading authorities on both sides of the question are the following: *Huntington v. Cast*, 149 Ind. 255; *Parsons v. Durand*, 150 Ind. 203; *Brady v. Sweetland*, 13 Kan. 41; *Braidy v. Theritt*, 17 Kan. 468; *Guillotte v. Poincy*, 41 La. Ann. 333; *Beebe v. Robinson*, 52 Ala. 66; *Moulton v. Reid*, 54 Ala. 320; *Sheridan v. Colvin*, 78 Ill. 237; *Poyer v. Des Plaines*, 123 Ill. 111; *Kerr v. Trego*, 47 Pa. St. 292; *Appeal of Gilroy*, 100 Pa. St. 5; *Goldsworthy v. Boyle*, 175 Pa. St. 246. Suffice it to say upon the general subject that it is a field which courts of equity should enter with their drastic injunctions with great hesitation. Even if such action is maintainable in the name of the individual, the interests to be affected are most essentially of a public char-

acter, and the interest of the individual, or coterie of individuals, in an office, especially in a legislative office, sinks into insignificance in comparison with the vast public interests to be affected by excluding therefrom those whom the popular will has designated. By such injunctions the most overwhelming expressions of popular will in favor of or against some policy may be thwarted, enough of the members of a city council — nay, even of the legislature itself — may be excluded to wholly reverse the true majority, and long enough to enable the issue of bonds or passage of acts which may have been the real subject of an election and been forbidden by the popular vote. Such a catastrophe is all the more possible because of the imperfect character of the evidence on which, under our practice, preliminary injunctions issue. The recklessness with which parties verify the most vehement pleadings and affidavits at times is appalling, and may well cause hesitancy in issuing perhaps ruinous restraining orders in reliance thereon. The law has provided machinery by the orderly progress of which the election and certification of public officers are to be had, and to those tribunals has delegated both the authority and power to act. If that machinery is inadequate to protect the rights of the people, it is for them, through the medium of their legislature, to correct its defects; and neither the authority nor the duty is upon the courts to seek to supply them. The legislature has not said that, in case of a contest in the forms prescribed by statute, nor even in case of proceedings by *quo warranto*, the officer whom the machinery of the law has declared by its certificate entitled to the office shall refrain from exercising its functions, and for a court to assume to so declare trenches closely upon the function of the legislature. *State ex rel. Jones v. Oates*, 86 Wis. 634. Yet to such extent go appellant's argument and remarks in some of the cases. We do not say that a court may not protect him who by the

statutory machinery is placed in the office against violent disturbance or usurpation by another having not the *prima facie* right, but that it must be a clear and urgent case in which the judiciary should feel obliged to supplement the methods and guards provided by the legislature.

The only question before us on this appeal, however, is whether the superior court was clearly guilty of an abuse of its discretion in declining to issue the injunctional order prayed in this case. That discretion is of the broadest, and is seldom interfered with. The latest of the very few instances of such interference in this court is the case of *Valley Iron Works Mfg. Co. v. Goodrick*, 103 Wis. 436. There the action of the trial court was reversed. It was there held that where the complaint states a cause of action for affirmative remedy, and judgment will otherwise be rendered fruitless, and the injury to the defendant or others likely to result from the injunction *pendente lite* is not serious in comparison with that to be suffered by the plaintiff in the event of denial, and if the rights of the party to be enjoined can be protected by an undertaking or otherwise, it is an abuse of discretion to refuse it. The court in that case was speaking of a temporary injunction ancillary to the relief sought in the same action, namely, the specific performance of an agreement to convey a patent which the insolvent defendant was threatening to convey away pending the litigation, from which great injury was liable to be suffered by the plaintiff, and from restraining which but trifling injury was likely to be suffered by the defendant, which was of a pecuniary character and might well be protected by a money security. In the case at bar the situation is very different. The right of the plaintiff to his office or his establishment therein could not be the relief to be ultimately obtained. Indeed, no final relief was sought, if we construe the complaint as we must in order to find any cause of action,— merely the keeping defendants out of office till their right

be legally established.   There was no reason to suppose this
action need ever proceed to judgment, for the proper statu-
tory action in nature of *quo warranto* could obviously reach
trial much sooner; it being entitled to special speeding, both
by statute (sec. ·3469, Stats. 1898), and by custom.   So that
there was no certainty, nor much probability, that there ever
would be any judgment at all in this case, to be rendered
unavailing in absence of the order refused.   It is in effect a
restraining order requested in one action because the judg-
ment in another action, not yet begun, may otherwise be
futile,— a purpose not recognized by our statute (sec. 2774),
and not that present in *Valley Iron Works Mfg. Co. v. Good-
rich, supra.*   The place for the ancillary *pendente lite* in-
junctional order under our Code is *in* the principal action,
the effectiveness of whose judgment is threatened, not in a
separate suit, as in those jurisdictions where such order is
not within the power of a common-law court.   Further than
this, the injury, either to the rights of the plaintiff or any
one else, from a change in the *status quo,* was in no respect
greater than that to the defendants and to the public from
the temporary injunction should their title ultimately be es-
tablished.   In either event the will of the people, declared
in the manner prescribed by law, would have been defeated
if judgment ultimately went in favor of the excluded party.
The injury in either event was one quite incapable of being
measured in money, so as to be protected by an undertaking.

   Again, the allegations of the complaint, upon which alone
the application was based, are extremely feeble and general.
They fall far short of establishing any real peril of turbulent
or riotous disturbance of the orderly proceeding of the city
government.   They are all consistent with regular and or-
derly procedure such as the law contemplates, namely, the
receiving of election certificates and the presentation of them-
selves for recognition by the authority constituted by law
·to recognize only the legal holders of the offices.   They could

not intrude themselves into the offices of aldermen unless the mayor and city clerk recognized them as such, and surely, in the absence of allegation, the court was not to presume that such officers would act in breach of their duty. No threat is alleged, and a fair construction of the allegations goes no further than an assertion of a purpose to make claim for their seats in accordance with the alleged opinion of the city clerk as to their rights therein,— a course to be encouraged, rather than restrained. Regularity and *prima facie* title should be protected *pendente lite*, rather than the opposition to them. *Goldsworthy v. Boyle*, 175 Pa. St. 246. So far as this court has spoken, its policy is in favor of aiding, rather than restraining, the person holding the *prima facie indicia* of title, as against one in possession. *State ex rel. Jones v. Oates*, 86 Wis. 634. Respondents had the right to claim their offices,— at least, to ascertain whether they were excluded. The allegations do not show any knowledge in the person verifying the complaint, and most of them are of such a character as to make certain that they expressed only the conclusion or belief of the pleader. The force to be accorded allegations in a complaint, when sought to be made a basis for a temporary injunction or other drastic process, is very different from that to which they are entitled in deciding on the sufficiency of the pleading when assailed by demurrer. In the latter case they justify only the procedure of the suit, and impose no harm on the other party, save submitting to an investigation and trial of the facts. When, on the other hand, it is sought to invade the liberty of action of a party, without trial, upon the complaint as an affidavit, allegations should be carried no further than the necessary force of their words. It is as pleadings that allegations are liberally construed, not as assertions of fact to support injunctions. The court was entitled to use his knowledge both of counsel who prepared and of the plaintiff who verified this complaint, in weighing the very cautious alle-

gations as to imminent peril therein contained, and presumably did so, and reached the conclusion that, if there were any real threats or imminent peril, they would have been made to appear more clearly.

Another consideration, doubtless of weight with the superior court, was that it by no means clearly appeared that the title of the defendants to the offices was not full and legal. The construction of the general city charter as to the time of termination of plaintiff's term of office is subject to vigorous opposing arguments. On the one hand, it is said that sec. 26, ch. 326, Laws of 1889, amended by sec. 2, ch. 70, Laws of 1897, provides that all officers shall hold their offices for one year, except justices and aldermen, who shall hold for two years and until their successors are qualified; that this language is unambiguous, not open to construction, and protects the plaintiff in his seat until July 5, 1899, also, as a corollary, until the third Tuesday in April, 1900, because by other sections his successor must take office on the third Tuesday in April following his election, which must be on the first Tuesday of some April, and therefore he cannot be lawfully elected until an April subsequent to July 6, 1899. On the other hand, argument is made that the statute relied on (now sec. 925—26, Stats. 1898) relates to officers in a going city; that its application to the first officers, elected in the midst of an electoral year, conflicts with the general scheme of city government and elections, requiring all cities to hold their elections on the first Tuesday in April; that such officers are anomalous, and could not have been intended by the legislature to be regulated by these general provisions; that the declaration of a two-year term could not have been intended to apply to them, because they could not hold two years by any possibility,— elected in July, they must hold either one year and nine months, or two years and nine months, since successors must take office in April. It is also pointed out that plaintiff, as well as

every one else, has recognized the inapplicability to the spo-
radic first officers of the general provisions of the charter;
for he considered himself and the other officers entitled to
take office immediately on his election, in July, instead of in
the April and May following his election, as commanded by
sec. 925—28. This idea finds support in *State ex rel. Williams
v. Mayhew*, 21 Mont. 93, where the first commissioners of a
new county were held free from the constitutional requirement
that all county commissioners should hold for a term of four
years, as their situation is exceptional, and application of the
provision to them would confuse the general scheme and
prevent the uniformity among counties which the consti-
tution sought to promote.    Similar reasoning appears in
*Wright v. Adams*, 45 Tex. 134, 140.    It is further pointed
out that the legislative policy evidently originally contem-
plated that the tenure of the first officers should extend
only to the end of the first and second electoral years, but
that by confusion among amendments the express words ef-
fectuating that policy as to aldermen were allowed to dis-
appear from the statutes under circumstances precluding
any intention to change the policy itself.

The question also suggests itself whether the word year
in this charter, and in other parts of the statute relating to
terms of office, means calendar year, or an electoral year, so
to speak,— a period terminating with the third Tuesday in
April following the regular time of municipal elections.  The
latter view receives support from the fact that, throughout
the history of the state, officers under such statutes have not
held for full calendar years.    Where the terms commence
on a specified day of the week, they have always terminated
at the end of 364 days or 728 days, in six years out of every
seven, and the seventh year they have extended over 371
days.    If the word "year" be used in this sense, of course
plaintiff would have held office for two years on the third
Tuesday of April, 1899.

We refrain,. however, from any expression of opinion as to the correctness of either of these contentions; for otherwise we should, in effect, pass on the question of title to the office, which all the authorities agree would be unseemly and improper in this form of action. Suffice it to say that there were numerous considerations of public right and convenience, of comparative injury to the respective parties, and of possibility of protecting any rights by restraining orders or otherwise within a suit properly brought for adjudication of title to the offices, on which the discretion of the superior court might properly have passed, and that we do not discover such abuse of that discretion as to warrant a reversal of his conclusion, especially now, when the contested term is so nearly at an end, and when there has already been such abundant time to have obtained a final adjudication of the parties' ultimate legal rights, if there is in good faith a real contention between them.

*By the Court.*— Order appealed from affirmed.

MARSHALL, J.  I have serious doubts as to the correctness of the decision rendered in this case, and dissent from some of the reasoning upon which it is based. Such reasoning, in my judgment, may seriously embarrass the court hereafter if it goes entirely unchallenged at the start.

There is no doubt but that the pleader did not fully understand, when he drew the complaint, that the equitable remedy of an incumbent of a public office, against a person deemed by him to be an unlawful claimant of the franchise and about to intrude himself into the position, is limited to preventing such person from performing the duties of such office or interfering with performance of such duties by the incumbent, till such person shall have secured an adjudication of his right at law. The remedy cannot be used to try the title to the office, directly or indirectly. Nevertheless, the complaint was broad enough for such relief as is obtainable

Ward vs. Sweeney and others.

in equity under the circumstances stated. It was treated in that way in the court below, and we may say has received like treatment in the opinion of my brethren; but most of the reasoning of such opinion, as it seems, bears on the existence of the power of a court of equity to act at all in such cases, and the propriety of exercising the power if it does exist.

Nothing should be said, in my judgment, that may be construed into a denial of the power of a court of equity to prevent a person, claiming to be entitled to an office, from proceeding to obtain possession thereof or of those things appertaining to the performance of its duties, as against a *de facto* officer with reasonable ground for his claim to be the rightful official, in any other way than that provided by law.

Though it will not be discovered by the casual reader, and may not be by the profession generally, I understand the decision of the court to be really grounded on the idea that, admitting all the facts alleged to be true, it is quite doubtful whether plaintiff is entitled to the office at all,— whether the facts alleged would be effectual against an action of *quo warranto*. In that view only, I am not prepared to say it was an abuse of judicial discretion on the part of the court below to refuse temporary relief, and with such view I participated in the decision of this court.

Assuming that the facts alleged, if true, show that plaintiff is entitled to the office, I cannot subscribe to anything said in the opinion that casts doubt upon the power of the court, by an entirely independent action in equity, to protect him in the possession of the office and the undisturbed performance of its duties, till his adversary shall have caused his right to be established at law.

It is said in the opinion that numerous cases therein cited go no further than to sustain such an action as ancillary to an action pending at the same time to try the title to the

office.   An examination of such cases will show that they were independent actions, and that not one of them was ancillary to another action pending to try the title to the office. *Brady v. Sweetland*, 13 Kan. 41, is a fair sample of all.   That was an independent action by the incumbent of an office who claimed to be rightfully there and entitled to continue, against a claimant to prevent him from exercising the duties of the office till he instituted an action and established his right at law.   A temporary restraining order was denied in the lower court, and such denial was reversed on appeal upon the theory that the right to the remedy was absolute under the circumstances, and that to deny the temporary relief in effect denied the right to such remedy.   There is a multitude of authorities to the same effect.   None of them says that the remedy is ancillary only to a pending action to try the title.   The very purpose of the remedy is to enable a person in office to compel the person claiming a right thereto to bring an action and have such right established at law before attempting to obtain possession of the office or to perform its duties.   The idea that the remedy can only be resorted to in aid of a pending action of *quo warranto*, in my judgment, has no support.   On the contrary, in the circumstances under discussion, the cases cited in the opinion of the court show that the subject of preventive relief in an action brought for that purpose only, entirely independent of any other action, is one of the well-understood subjects of equity jurisdiction.   It is so laid down in the elementary books, without criticism by the authors, and without citation of authorities except those supporting the jurisdiction and the exercise of it.   Beach, Injunctions, § 1380; High, Injunctions, § 1315.

I cannot subscribe to the idea, either, that the court should hesitate to use its equity power to protect a *de facto* officer in the circumstances stated, where the facts alleged by him support his position and there is some reasonable probability

Ward vs. Sweeney and others.

of the existence of such facts. The danger to public, as well as to private, interests from allowing claimants of public offices to forcibly intrude themselves into the same, or to exercise the duties of the positions in hostility to *de facto* officers already in such positions, is very great, and should be prevented in every practicable way. The injunctive remedy to that end should be used freely when there is a clear case calling for it. It is the only remedy that can be resorted to to compel a determination of the right to the office, under such circumstances, by peaceful methods. The right idea was expressed in *Palmer v. Foley*, 4 Jones & S. 14, where it was said, in effect, that a *de facto* officer has no need to institute an action of *quo warranto* to try the title to the office or to protect his possession. It is the business of the claimant, who is trying to break in, to resort to that remedy. The person claiming to be rightfully in the office may use the physical remedy to prevent being dispossessed, or he may resort to the more peaceful remedy in equity by injunction to protect his possession; but the latter should be preferred, and the court should do nothing to encourage a resort to the former. The court said: "The earliest jurisdiction, if not at that time the chief business of the court of chancery, was to prevent assaults, trespasses, and a variety of outrages. . . . And the jurisdiction, in cases of trespass to property, has been continued to the present time, and is sustained upon the principle of irreparable mischief." Speaking of the case in hand, the court said, in substance, the jurisdiction to protect the incumbent was of the same nature as that to protect the possessor of property against trespass upon his rights resulting in irreparable mischief. No exact limitation is placed upon the jurisdiction in this class of cases. The equity power of the court to avoid the mischiefs of personal conflicts over the possession of an office, or of two persons attempting to perform its duties at the same time to the detriment of public interests and the

disturbance of the public peace, ought to be and is the same as regards preventing unlawful violations of his rights of property, and the course of a person in resorting to that remedy, in all proper cases, should be commended and sustained.   See, also, *Sullivan v. Haacke*, 5 Ohio N. P. 26.

That is the doctrine that underlies all the cases cited in the opinion of the court where the jurisdiction of equity was exercised.  Can there be any doubt but that the method, often adopted, of forcibly taking possession of an office, or of a claimant exercising its duties while another incumbent of the office still claims the right to perform such duties, with some reasonable ground for such claim, should be condemned, and that the only peaceful remedy, whereby the incumbent of an office can protect his possession and the public interests till the right is decided at law, should be encouraged ?

I cannot subscribe to the idea that there is any substantial conflict in the adjudications, either as to the power of the court or advisability of its exercise in cases like this. An examination of the cases cited in the opinion of the court to sustain the suggestion that there is such conflict, will demonstrate that they are in substantial harmony where the person in possession was a *de facto* officer.   The idea that they are out of harmony comes from not distinguishing between *de facto* officers and mere usurpers, and the exercise of equity power to prevent interference with a person in possession of an office from its exercise to try the title to the office or to restrain such person from performing its duties.   In the first class of cases the jurisdiction is sustained; in the last two classes the right is denied.   The distinction is easily understood, and, as indicated, the cases cited will generally be found in harmony if that distinction be kept in mind.

To illustrate, in *Parsons v. Durand*, 150 Ind. 203, it is said injunction is the proper remedy when one occupying

an office seeks to stay the intrusion of another claimant into the office until title has been determined at law, while in *Harding v. Eichinger*, 57 Ohio St. 371, it is said injunction will not lie at the suit of a claimant to a public office who is out of possession, against an adverse claimant who is in possession; that while the incumbent is entitled to that remedy to protect his position against interference by an adverse claimant, until the latter establishes his right, such claimant is not entitled to such remedy against the person in possession of the office; that the sole remedy of the adverse claimant is an action at law to try the title to the office. *Goldsworthy v. Boyle*, 175 Pa. St. 246, and *Appeal of Gilroy*, 100 Pa. St. 5, were both actions in equity to try the title to an office.

I cannot subscribe to the idea that the second aldermen had a *prima facie* right. My brethren probably did not intend to decide that way, but there are several expressions in the opinion of the court that pretty clearly convey such idea. We cannot say that the adverse claimant had a *prima facie* right merely because he held a certificate of election, unless we say that the charter authorized an election for aldermen at the time such adverse claimant was elected, and that is what the court does not intend to decide in this case.

Neither can I subscribe to the application made of the doctrine of *Valley Iron Works Mfg. Co. v. Goodrick*, 103 Wis. 436. The idea plainly expressed in that case is that if a person, on the facts alleged, be clearly entitled to a particular remedy, and there be reasonable ground to apprehend the facts may be established by proof, and without a temporary restraining order preserving the *status quo* till the termination of the litigation the purpose of the action will be entirely defeated, such temporary restraint should be applied under such circumstances as to reasonably protect all parties to the litigation. My brethren are made to say here

that such a situation was not presented in this case because, there being no action pending to try the title to the office, there was no certainty of a judgment that would be rendered ineffective for want of temporary relief preserving the *status quo* during the litigation. In that there is failure to perceive, as it seems, that the temporary relief referred to in the rule is ancillary to the relief sought in the action where such temporary relief is granted, not to relief in some other action. If the sole purpose of an action be to restrain a defendant from doing some act, and the right to that remedy is plain and will be entirely lost unless temporary restraint be granted to last till the final judgment can be obtained in the action to enforce such remedy, because in the meantime the very mischief aimed at will have been accomplished, it must be plain that a denial of the temporary relief to prevent such a contingency is in effect a denial of the ultimate relief asked. For that reason it is held that judicial duty requires the preservation of the *status quo* pending the litigation, on such terms as will be just to both parties. That is the law as laid down in the books generally, as will be seen by a study of the *Valley Iron Works Case.*

I subscribe to all that is said in the opinion of the court as to the care that should be exercised in granting injunctive relief, but we must not lose sight of the fact that judicial power in that regard is absolutely essential to the effective exercise of equity jurisdiction to the end that the property and personal rights, public and private, may be adequately guarded. There is no danger to be apprehended from the proper use of that power. It is inconsiderate use of it that works mischief. Where a person alleges facts constituting a cause of action and shows, reasonably, that the allegations are true entitling him to the specific relief asked, and the case is one that a court of equity ought to entertain to the end that such relief may be obtained, and the purposes of the action will be entirely defeated without temporary re-

straint upon the defendant pending the litigation, it is plain to a demonstration that such restraint should be applied. The right to maintain the action and the right to preserve the *status quo*, so as to render the final decree effective to accomplish the purposes of the action, are inseparably connected together. So here, if it were certain that the facts alleged entitle plaintiff to the office of alderman, the allegations showing clearly that the defendant, without securing an adjudication of his right at law to such office, will, unless restrained by the court, intrude into the office and interfere with plaintiff's administration of it, such plaintiff's right to the equitable remedy would be clear, and his right to have such restraint put upon the conduct of his adversary as will prevent the threatened mischief occurring before it can be remedied by the final decree, would be as clear, the temporary restraint, of course, to be applied under such circumstances as to protect, so far as practicable, the interests of both parties to the litigation.

Unless it be understood that courts of equity have, and will freely and vigorously exercise, when occasion requires, the power here discussed, to prevent the mischiefs of physical and other unlawful contests over offices, including that which exists where there is a *de facto* officer in office, performing its duties, and another endeavors at the same time to perform such duties, each claiming and endeavoring to force from the other, and the public, recognition of his claim, such mischiefs will be encouraged by the want or weakness of peaceful remedies. There is no such weakness. The court, as the supreme and rightful arbiter of all such disputes, has ample power to do its work speedily and efficiently, and to prevent the mischiefs that characterize efforts to otherwise settle such disputes.

No one can tell how soon the power we confidently assert courts of equity possess may necessarily be called into activity in respect to some important office. To cast

Ward vs. Sweeney and others.

doubts upon the existence of the power or propriety of exercising it in this rather unimportant case, if the facts existed to warrant such exercise under the restraints and within the limitations to which we have referred, would create an unfortunate precedent. Nothing here said, regarding the exercise of the power discussed, is intended to apply to a mere usurper of an office.

As before indicated, solely upon the ground that it does not appear to a moral certainty that, conceding all the facts set forth in the complaint to be true, plaintiff was entitled to remain in the office of alderman, I am able to come to a conclusion that the trial court properly declined to grant a temporary restraining order.

BARDEEN, J.   In so far as the decision in this case attempts to limit the power of a court of equity to protect a *de facto* officer in office from an intruder, I think it runs counter to the great weight of authority.   The opinion admits the existence of the power, but the discussion confines it to such narrow limits as leaves scarcely a vestige of it.   As noted by my brother MARSHALL, the courts have no hesitancy in exercising it in a proper case, and we need have no fear that any harmful results will follow from it. I admit with some hesitancy that the facts in this case do not clearly show a situation where such power should be exercised, but I cannot admit that the power of the court is confined to any such narrow limits as designated.   There are also some expressions in the opinion which would seem to indicate that the court will only interfere in aid of pending or prospective litigation.   Such is not the rule, as I understand it.   I put my concurrence in the affirmance of the order appealed from on the sole ground that it does not clearly appear that the plaintiff was entitled to the relief sought, and we cannot say, with confidence, that the court below was guilty of a breach of judicial discretion in denying the temporary relief sought.