BURNEY *v.* RYLE & COMPANY.

Unless personal services are individual and peculiar because of their special merit or unique character, a negative covenant (even when express) not to render them to others than the plaintiff, will not be enforced by injunction in order that the plaintiff may have the incidental benefit of an affirmative covenant to serve him exclusively for a specified time. Hence, where one assigned to a firm his interest in a certain contract of agency for an insurance company, and in the assignment covenanted to remain with the firm as special agent in a named State for one year, and to give his entire time and attention to the business of that company by pro-

curing for it applications for insurance, an injunction will not be granted at the instance of the firm to restrain the assignor from soliciting insurance or transacting business for a rival company, the assignment containing no express covenant that he would not do so, and it not appearing that he was a specially skillful, successful or expert insurance agent whose place could not be readily supplied by another equally competent to attend to the business for which his services had been engaged.

May 22, 1893.

Before Judge MARSHALL J. CLARKE. Fulton county. April 29, 1893.

HINES, SHUBRICK & FELDER, for plaintiff in error.

ARNOLD & ARNOLD, by brief, *contra*.

LUMPKIN, Justice.

The plaintiff in error, Burney, under a contract with one Crawford, the manager of the Massachusetts Benefit Association, an insurance company, had certain rights to transact business in the State of Georgia as the agent of that association. By a written contract he sold and assigned to the defendants in error all his right, title and interest in and to the contract with Crawford above mentioned. The assignment also contained the following covenant: "I hereby bind myself to remain with the said firm of D. M. Ryle & Co., as special agent in the State of Georgia, for one year from this date, and to give my entire time and attention to the business of the Mass. Benefit Association by procuring applications for insurance for said company; and such other duties as may be agreed upon by us." Ryle & Co. filed an equitable petition alleging that Burney had violated his contract with them, and was continuing to do so, by wholly abandoning his duties as solicitor for the Massachusetts company, and had begun business on his own account for the Connecticut Indemnity Association, which was an insurance company of a similar kind and a rival in business. They prayed, among other things, that he be enjoined from further breaking the contract.

by continuing to represent the Connecticut company, and from soliciting or writing risks in the State of Georgia for any other than the Massachusetts company, during the year covered by his contract with them. An injunction was granted, forbidding the defendant "to solicit or receive or transact business for any insurance company other than the Mass. Benefit Association until July 15, 1893." This action of the court is the error complained of.

It does not appear from the allegations of the petition, or from the evidence, that Burney, as an insurance agent, was in any way remarkable, or that he had shown himself to be such a specially skillful, successful or expert person in this business that it would be difficult or impracticable to supply his place by another agent equally competent to render such services as his contract required of him. For this reason the injunction, in our opinion, should have been denied. No doubt there are cases in which a court of equity will enjoin the breach of a contract, and compel one to abstain from performing personal services for other persons which he was bound to render exclusively to the plaintiff. "But the services to be performed must be individual and peculiar because of their special merit or unique character; for otherwise, the remedy at law would be adequate. But where the services involve the exercise of powers of mind, as of writers or performers, which are peculiarly and largely intellectual, they may form the class in which the court would interfere upon the ground that they are individual and peculiar. Damages for a breach of such contracts are not only difficult to ascertain, but cannot, with any certainty, be estimated; nor could the plaintiff procure, by means of any damages, the same services in the labor market as in case of an ordinary contract of employment between an artisan, a laborer or a clerk, and their employer." 2 Beach on Mod. Equity

Jur. §772. The same doctrine is laid down in 3 Pom. Eq. Jur. §1343, in which the following language is used: "Where a contract stipulates for special, unique or extraordinary personal services or acts, or for such services or acts to be rendered or done by a party having special, unique and extraordinary qualifications,—as, for example, by an eminent actor, singer, artist, and the like,—it is plain that the remedy at law of damages for its breach might be wholly inadequate, since no amount of money recovered by the plaintiff might enable him to obtain the same or the same kind of services or acts elsewhere, or by employing any other person." There is nothing in the record before us to authorize the conclusion that Burney had extraordinary or even unusual qualifications for the business which he undertook to transact, and therefore, under the rule laid down by the eminent text-writers from whom the above quotations are made, the present case is not a proper one for injunction.

There has been considerable discussion of the question as to whether or not an injunction would be granted in any case of this kind unless the stipulations not to render services to others were in form expressly negative. In the case at bar, there was in the contract no express negative covenant by Burney not to render services to others than the plaintiffs. In Whitwood Chemical Co. *v.* Hardman, L. R. (1891), 2 Ch. Div. 416, a recent and thoroughly well-considered case, it was held that, in the absence of any negative stipulation in that behalf, the plaintiffs were not entitled to an injunction to restrain the manager of certain chemical works (who had agreed to give to their business, during a specified term, the whole of his time) from giving, during the term, a part of his time to a rival company. To those who may wish to further investigate this question, the opinion of Kekewich, J., from whose judgment an appeal was taken and whose decision was reversed, and also the

opinions of Lindley, L. J., and Kay, L. J., will be found decidedly interesting. And in the same connection it will be profitable to examine Kerr on Injunctions, 445 et seq.; Singer &c. Company v. Union &c. Company, 1 Holmes, 253, and McCaull v. Braham, 16 Fed. Rep. 37. The elaborate and well-prepared note of Mr. Abbott appended to the case last cited is a valuable contribution to the law pertaining to this subject.

We deem it unnecessary, however, to enter into a further discussion of the question whether an express negative covenant in a contract of the kind under consideration is essential to the proper granting of an injunction, because, treating the contract in the case at bar as if it had contained such covenant, the injunction should nevertheless have been refused for the reason stated in the beginning of this opinion.

*Judgment reversed.*