CHAIN BELT COMPANY, Appellant, vs. VON SPRECKELSEN and others, Respondents.

*December 17, 1902—March 21, 1903.*

*Preliminary injunction: Dissolution: Discretion: Master and servant: Restraining employee from quitting service.*

1. Although the essential allegations of the complaint are denied by the answer, it is within the discretionary power of the court to continue in force a preliminary injunctional order and thus

preserve the *status quo* until the termination of the litigation; and this should be done, upon such terms as will reasonably protect the defendant's rights, if otherwise the object of the action may be defeated and the plaintiff suffer irreparable injury.

2. In an action to restrain an expert mechanic and mechanical engineer, under contract of employment with plaintiff, from entering into the service of another company, the complaint alleged that he had, by reason of his employment with plaintiff, acquired peculiar knowledge of all the records, designs, patterns, models, etc., which had been worked out by and for the plaintiff and belonged exclusively to it and were used in its manufacturing business, and had come to know all the secret methods and valuable secrets pertaining to such business, and so was possessed of knowledge and skill in regard to such business which was possessed to the same extent by no other man, the benefit of which he was wrongfully about to give to said other company. His verified answer denied, however, that he knew any secrets or secret methods pertaining to the business or that by reason of his employment with plaintiff he had acquired any peculiar knowledge or skill pertaining to its business or its records, drawings, patterns, models, etc., except such as would be acquired by any person in the same position, and alleged that before he entered plaintiff's service he had been employed by the company which originated the business and had there acquired his knowledge and skill and had freely given plaintiff the benefit thereof, and that such knowledge and skill were possessed by many other men, some of whom were still in plaintiff's employ. Upon a motion to dissolve a preliminary injunctional order there was no attempt to dispute such statements of the answer. *Held*, that there was no abuse of discretion in dissolving the order.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The complaint alleges, in effect, the incorporation of the plaintiff under the laws of this state, and that during the last ten years it had been, and still is, engaged in business at Milwaukee in the manufacture and sale of chain belt links and similar products; that the defendant corporation was organized under the laws of this state a few weeks prior to the commencement of this action, for the purpose, among other things, of manufacturing chain belt and chain belt

links; that the other defendants were officers of that corporation; that *Von Spreckelsen* had agreed with the other defendants to become the manager of that corporation. It then alleges that the plaintiff entered upon the business of making such chain belt and chain belt links, of malleable iron, in 1891, in a small way, in Milwaukee; that its business has grown ever since, and during the last year has been of the value of $200,000, and was very profitable, and that the plaintiff has a very large and extensive trade in such business; that such belts are used, among other things, for the transmission of power upon and through the use of sprocket wheels; that, in order to be practicable and valuable and marketable, such chain belt and links must be designed and manufactured with extreme nicety and accuracy; that many thousand different designs for such belts and links have been worked out by and for the plaintiff, and belong exclusively to it; that complete, accurate, and minute records of the designs, models, and patterns have been and are preserved in books, drawings, designs, and prints by the plaintiff; that such links can be duplicated from such records, drawings, and models by any one possessing the requisite mechanical skill; that *Von Spreckelsen* is, and for many years last past has been, an expert mechanical engineer and an expert mechanic, and ever since 1892 has been, and still is, in the employ of the plaintiff, and as such has had exclusive charge, custody, and control of all such designs, drawings, prints, gauges, patterns, and models, and of the construction of all such patterns and models, and has kept and had custody and control of all the records, and has had and has exclusive control and charge of the pattern department of the plaintiff, and has had cognizance of the manufacture of all the output and product of the plaintiff; that for many years last past the plaintiff has had all the castings of such chain belt and chain belt links made by the Northwestern Malleable Iron Com-

pany, certain of whose stockholders at all times were, and still are, largely interested in the plaintiff; that in the manufacture of such castings the molds therefor were made by the Northwestern Malleable Iron Company from the patterns so belonging to the plaintiff; that, by reason of such employment, *Von Spreckelsen* had prior to July 11, 1900, acquired, and then had, and ever since has had, and now has, peculiar knowledge of all and singular the said matters of such records, designs, drawings, prints, gauges, patterns, and models, and peculiar skill in the reproduction thereof, and in the manufacture of chain belt and chain belt links therefrom, and came to know, and still knows, all of the secret methods and valuable secrets of and pertaining to the business, and came to know, and now knows, all the matters of detail regarding the manufacture and disposition of such output of the plaintiff from the incipiency of the respective designs up to the completion, and respecting the sale and shipment of the finished product, and so has acquired and has knowledge and skill in regard to said manufacturing business which is possessed to the same extent and completeness by no other man. The complaint then alleges that shortly before July 11, 1900, *Von Spreckelsen* suggested to the plaintiff that he proposed to leave its employ, and thereupon, and in order to continue his service, and to enable the plaintiff to avail itself for a term of years of such services, and to secure to this plaintiff exclusively the services and knowledge and skill of *Von Spreckelsen,* and to preclude him from using any of his knowledge or skill for the benefit of any competitor of the plaintiff, *Von Spreckelsen* made and entered into a written contract as follows:

"Milwaukee, Wis., July 11, 1900.
"I hereby agree to work for and take charge the pattern work of *Chain Belt Co.* and faithfully perform all duties connected with my work, and any other reasonable mechan-

ical duties required of me by said company and keep all gauges and records and models so that they will be saved as far as within my power solely for the use of said company. My compensation to be 42½ cents per hour for all regular time, and all over time at the same rate per hour. Pay every month. This agreement to be and remain in force for the term of three years, with the understanding that said *Chain Belt Co.* may renew this agreement for two years more at their option after the said three years expire.

"George Von Spreckelsen.

"Accepted. *Chain Belt Co.,* by C. W. Levalley, President. July 11, 1900."

It is then alleged that May 13, 1901, owing to some mistakes and misunderstandings, the plaintiff and *Von Spreckelsen* made and executed and entered into a further contract, written upon the back of the agreement of July 11, 1900, as follows:

"Referring to contract on opposite side of this sheet. It is mutually agreed between *Mr. George Von Spreckelsen* and *Chain Belt Company,* the parties to said contract, that this said contract shall be extended to cover the time up to July 1st, 1904, with the same rate of payment of 42½ cents per hour, but *Mr. George Von Spreckelsen* agrees to recognize the authority of and obey the instructions of Mr. Donald Fraser, the present superintendent of *Chain Belt Company,* cheerfully and willingly, and will obey any other superintendent who may be appointed by said *Chain Belt Company* or obey the orders of the constituted officers of said *Chain Belt Company* cheerfully and willingly and do all in the power of said *George Von Spreckelsen* to further the interest of said *Chain Belt Company* without any turmoil or bad feeling, and do said *Chain Belt Company* no injury and keep safely and inviolate all records and tools, models, gauges, materials and supplies that have been intrusted to him and turn them over to said *Chain Belt Company* upon their demand.

"In additional consideration for the foregoing at the full completion of this contract and agreement the said *Chain Belt Company* will pay unto the said *George Von Spreckelsen* the

sum of two hundred dollars ($200) as a further bonus for such good conduct and faithfulness on July 1st, 1904.

"Signed this 13th day of May, 1901.

"GEO. VON SPRECKELSEN.    [Seal.]

"CHAIN BELT CO.

"By C. W. LEVALLEY, Pres't."

It is alleged that the plaintiff performed all the conditions of both such contracts on its part, and *Von Spreckelsen* did also until June 11, 1902; that June 5, 1902, *Von Spreckelsen* notified the plaintiff in writing that he would cease performance on his part of such contracts July 15, 1902; that the plaintiff denied his right to terminate such contracts, and insisted upon his continuance.

The complaint then alleges that the defendant the president of the defendant corporation had been for many years a confidential clerk of the Northwestern Malleable Iron Company, and while thus engaged learned of the profitable character of the plaintiff's business and the fact that *Von Spreckelsen* had acquired and possessed peculiar knowledge of the plaintiff's business aforesaid; that the several defendants, knowing the facts and circumstances mentioned, combined, confederated, and conspired together to organize a corporation, and through it to fraudulently secure the trade of the plaintiff, and supplant it in the market, by making goods that should be in appearance identical with the product of the plaintiff, and by suggesting, by means of the name of such new corporation and otherwise, that the goods of such new corporation were the goods which had theretofore been known as the goods of the plaintiff, and which had, by reason of their superior excellence, acquired and now have a high reputation in the market, and did combine, confederate, and conspire together, and with other persons unknown to the plaintiff, to impede, hamper, and impair the plaintiff in the conduct of its business, and cripple it and destroy its efficiency, and, to that end, conspired and confederated together

to wrongfully and unlawfully seduce from its employment *Von Spreckelsen,* and to wrongfully and unlawfully induce *Von Spreckelsen* to refuse to fulfill and carry out said contracts on his part, and to leave the service of the plaintiff and enter upon a similar service for the defendants and the defendant corporation; that in furtherance of such conspiracy the defendant corporation was, May 17, 1902, incorporated by the individual defendants, who were officers thereof, and thereupon wrongfully and unlawfully induced *Von Spreckelsen* to enter into an agreement with that corporation to serve as its superintendent and manager, and to give it the benefit of his peculiar knowledge and skill, and of the secrets of the plaintiff, and of its records, drawings, prints, designs, patterns, and models aforesaid; that the defendants threaten and give out that on and after July 15, 1902, they will enter upon such business, and that *Von Spreckelsen* will then leave the employ of the plaintiff and enter the employment of the defendant corporation, and give to it the benefit of labor, time, knowledge, and skill, and the secrets of the plaintiff's business so obtained; that *"Von Spreckelsen* has not sufficient pecuniary resources to respond to any judgment for damages for breach of such contract," and that unless the court intervened with an order of injunction, restraining the carrying out and consummation of such conspiracy, the plaintiff would be remediless and would suffer great and irreparable damage; that the plaintiff had notified the individual defendants, before bringing this action, of its claim in the premises, but they refused to desist.

Upon such complaint, verified by the president of the plaintiff corporation June 13, 1902, a temporary injunction was granted by a court commissioner on the same day. To such complaint the defendants made answer, duly verified by *Von Spreckelsen,* June 20, 1902, wherein they admitted certain formal allegations of the complaint, and denied many other allegations, and especially denied that *Von Spreckelsen*

was to become the manager of the defendant corporation, or that he was in the employ of the plaintiff, or has control or charge of the pattern department of the plaintiff, or any of its designs, prints, gauges, drawings, patterns, or models, or has had cognizance of the manufacture of all of the output and product of the plaintiff. And the answer, among other things, alleges, in effect, that *Von Spreckelsen* was a stockholder and director in the defendant corporation, and had, prior to the commencement of this action, agreed with it to serve it for a term of years as its superintendent and mechanical engineer, and had entered upon such duties; that the enormous profits realized by the plaintiff in its business, as alleged in the complaint, were largely due to an unlawful combination between the plaintiff and other manufacturers in restraint of trade, by means of which the price of such products was greatly enhanced to the consumer; that the defendant corporation intends to enter into competition with such trade and business; that the plaintiff possesses a full and complete equipment of such patterns, models, gauges, drawings, prints, and records used by it in its business, and that the same are substantially similar to, and practically duplicates of, the patterns, models, gauges, drawings, designs, prints, and records used by other manufacturers of chain belt and chain links; that while *Von Spreckelsen* was so in the employ of the plaintiff the duties performed and services rendered related solely to the production of the patterns from which the plaintiff's goods were manufactured, and that he occupied the inferior and subordinate position of foreman of that single department of the plaintiff's extensive manufacturing establishment; that the defendant corporation intends to manufacture its own patterns and models and its own castings of chain belt and chain belt links, as well as other malleable iron castings, to supply the general market.

The answer specially denies that *Von Spreckelsen,* while in the plaintiff's employ, acquired any peculiar knowledge of any

matters of its business, or records, designs, drawings, prints, gauges, patterns, or models except such as would ordinarily be acquired by any person in the same position, and alleges that the same knowledge is possessed by other persons still in the employ of the plaintiff; and the answer further denies that, by reason of such employment with the plaintiff, *Von Spreckelsen* acquired or possessed any peculiar skill in the reproduction of such records, drawings, designs, prints, patterns, gauges, and models, or in the manufacture of chain belt and chain belt links therefrom, or that he knows any secrets or secret methods of the plaintiff, valuable or otherwise, or that there are any such appertaining to the business, or that *Von Spreckelsen* came to know or knows the details of the plaintiff's business, or has acquired or has knowledge or skill in regard to said business or such business superior to that of all other men.

The answer further alleges, in effect, that *Von Spreckelsen,* for a long time prior to entering into the plaintiff's employ, was employed as foreman of the pattern and machine department of the Ewart Manufacturing Company of Indianapolis, Indiana, which company was the originator and first manufacturer of chain belt and chain links such as the plaintiff now makes, and which company was the founder of the chain belt business, and is now the largest manufacturer of such products in the world, and that while he was so employed he acquired his knowledge, experience, and skill in the making of all records, drawings, designs, gauges, prints, patterns, and models appertaining to the manufacture of chain belt and chain links, and the reproduction thereof, and of the methods of such manufacture, and the disposition, sale, and shipment of such products, which knowledge *Von Spreckelsen* brought with him when he entered the employ of the plaintiff, and has freely and fully given to the plaintiff the benefit and advantage thereof, which knowledge and skill are possessed by many other men engaged in the same line of business, and

that the assistant of *Von Spreckelsen* while in the employ of
the plaintiff, and who is now employed by it, and is now per-
forming for the plaintiff the services formerly rendered by
*Von Spreckelsen,* is capable of discharging the duties of that
position, with the aid of the records, designs, drawings,
prints, gauges, patterns, and models prepared by or under
the direction of *Von Spreckelsen,* and now in the possession
of the plaintiff; that in pursuance of a demand of the plaint-
iff, made June 11, 1902, *Von Spreckelsen* surrendered and
delivered up to it all records, designs, drawings, prints,
gauges, patterns, and models in his possession, and the same
were taken from him by the plaintiff, and *Von Spreckelsen.*
thereupon permanently quit the service of the plaintiff, and
refused longer to continue in such employment.

Upon such verified answer and the complaint the plaint-
iff was ordered to show cause why such injunctional order
should not be wholly vacated and set aside, or at least modi-
fied.   In resisting such motion an affidavit of the plaintiff's
president was presented to the court, in effect denying such
unlawful combination to enhance prices, or that the plaintiff
was ever connected with such combination to prevent compe-
tition, and especially denying that *Von Spreckelsen* was ever
required to work on Sunday, or anything more than the usual
and ordinary number of hours a day, and that whatever extra
and unusual work he performed was voluntarily performed by
him, and for which he received extra pay.

Upon the hearing of such motion, and upon the complaint
and verified answer and such affidavits, the court on July 7,
1902, ordered that such temporary injunction be, and the
same was thereby, wholly dissolved, vacated, and set aside,
with costs of motion.   From that order the plaintiff brings
this appeal.

For the appellant there was a brief by *Quarles, Spence &
Quarles,* and oral argument by *George Lines.*   They con-
tended, *inter alia,* that where a contract stipulates for per-

sonal services which involve skill, knowledge, or ability, an injunction will be granted at the request of the employer to restrain the employee from rendering services elsewhere, when irreparable injury will be caused the employer by such violation of contract. Pomeroy, Spec. Perf. §§ 24, 25; *Singer S. M. Co. v. Union B. H. & E. Co.* 1 Holmes, 253, Fed. Cas. No. 12,904; High, Injunctions, § 1164; *Cort v. Lassard,* 18 Oreg. 221, 6 L. R. A. 653. Thus, injunctions have been granted to restrain a singer or actor under contract from violating the contract and performing elsewhere. *Lumley v. Wagner,* 1 De Gex, M. & G. 604; *Daly v. Smith,* 49 How. Pr. 150–7, 6 Jones & S. 166; *McCaull v. Braham,* 16 Fed. 37, and cases in note; *Hayes v. Willio,* 11 Abb. Pr. (N. S.) 167; *Duff v. Russell,* 14 N. Y. Supp. 134, affirmed, 133 N. Y. 678; *Pratt v. Montegriffo,* 10 N. Y. Supp. 903, 25 Abb. N. C. 334; *Hoyt v. Fuller,* 19 N. Y. Supp. 962; *Canary v. Russell,* 9 N. Y. Misc. 558, 30 N. Y. Supp. 122. So baseball players have been enjoined from contracting with rival employers. *Metropolitan E. Co. v. Ward,* 9 N. Y. Supp. 779; *Columbus B. B. Club v. Reiley,* 25 Law Bull. 385, 11 Ohio Dec. R. 272. So it is held that a painter employed by photographers may be enjoined from violating his contract and engaging with competitors. *Fredricks v. Mayer,* 13 How. Pr. 566. Where plaintiff contracted with a theater manager for the use of his theater and for his services in the production of a play, plaintiff may enjoin him from assisting, advertising, or managing any other play or putting the theater to any other use during the period covered by the contract. *Lacey v. Heuck,* 9 Ohio Dec. R. 347. The limitation seems to be that when the services to be rendered are such as any one can render, injunction will not lie, but will when the services are peculiar or individual. *Wm. Rogers Mfg. Co. v. Rogers,* 58 Conn. 356, 7 L. R. A. 779. Some authorities distinguish between a contract which merely calls for the service of the employee, and an agreement in which the em-

ployee still further stipulates that he will not serve any other person during the term; but the best authorities with reason hold that where a contract does not contain such negative clause, such a clause will be presumed or implied. *Montague v. Flockton,* 16 L. R. Eq. Cas. 189, 28 L. T. (N. S.) 580; *Fechter v. Montgomery,* 33 Beav. 22; *Daly v. Smith,* 6 Jones & S. 166, 49 How. Pr. 157; *Butler v. Galletti,* 21 How. Pr. 465; *De Pol v. Sohlke,* 7 Robt. 280, 30 N. Y. Sup. Ct. 280. This must follow as a matter of logic where the contract stipulates for the entire time of the employee; and *a fortiori* where the contract, like the one in the case at bar, shows on its face that the purpose and consideration of the agreement was to secure the exclusive services of the employee.

*Edgar L. Wood,* for the respondents, argued, among other things, that courts of equity have assumed jurisdiction to enforce contracts for personal services only to the extent of enjoining one who has specifically agreed not to engage or render his services in the same capacity during a limited period of time to any other person, from violating such agreement. *Lumley v. Wagner,* 1 De Gex, M. & G. 604; *Duff v. Russell,* 14 N. Y. Supp. 134, 133 N. Y. 678, 31 N. E. 622; *Hoyt v. Fuller,* 19 N. Y. Supp. 962; *Whitwood C. Co. v. Hardman* (1891) 2 Ch. 416; *Hahn v. Concordia Soc.* 42 Md. 460; *Hayes v. Willio,* 11 Abb. Pr. (N. S.) 175; *Daly v. Smith,* 49 How. Pr. 150; *Canary v. Russell,* 30 N. Y. Supp. 122; *Jaccard J. Co. v. O'Brien,* 70 Mo. App. 432; *Paragon Oil Co. v. Familton,* 5 Ohio N. P. 23. The contract in suit contains no negative stipulation on the part of the defendant *Von Spreckelsen,* not to engage in the service of any one other than the plaintiff during the continuance of the contract. *Wm. Rogers Mfg. Co. v. Rogers,* 58 Conn. 356, 20 Atl. 467, 7 L. R. A. 779; *Burney v. Ryle,* 91 Ga. 701, 17 S. E. 986; *Sternberg v. O'Brien,* 48 N. J. Eq. 370, 22 Atl. 348; *Metropolitan E. Co. v. Ewing,* 42 Fed. 198, 7 L. R. A. 381; *Strobridge L. Co. v. Crane,* 12 N. Y. Supp. 898, 58 Hun,

611; *W. J. Johnson Co. v. Hunt*, 21 N. Y. Supp. 314, 66 Hun, 504; *Butler v. Galletti*, 21 How. Pr. 465; *Delevan v. Macarte*, 1 Ohio Dec. R. 226, 4 West. Law J. 555; *Ehrmann v. Bartholomew*, 67 Law J. Ch. 319, (1898) 1 Ch. 671; *Mut. R. F. L. Asso. v. New York L. Ins. Co.* 75 Law T. (N. S.) 528. In a contract like the one set forth in the complaint, requiring ordinary mechanical service as a pattern shop foreman, the services required are not unique or extraordinary. *Strobridge L. Co. v. Crane*, 12 N. Y. Supp. 898; *Cort v. Lassard*, 18 Oreg. 221, 6 L. R. A. 653; *American B. B. & A. E. Co. v. Harper*, 54 Cent. Law J. 449; *Wm. Rogers Mfg. Co. v. Rogers*, 58 Conn. 356, 7 L. R. A. 779; *Roosen v. Carlson*, 62 N. Y. Supp. 157.

Cassoday, C. J. The case is peculiar, and for that reason the facts upon which the preliminary injunction was dissolved are pretty fully stated. The essential allegations of the complaint are flatly denied in the answer, but that did not necessarily make it improper for the court to continue the preliminary injunction. *Valley I. W. M. Co. v. Goodrick*, 103 Wis. 436, 78 N. W. 1096. That was an action for the specific performance of a contract securing to the plaintiff the right to manufacture and sell machines embodying the defendant's invention; and in that case it was held, in effect, that the plaintiff, having given the requisite bond to protect the defendant, was entitled to the continuance of the injunction to preserve the *status quo* and prevent irreparable damage during the pendency of the action. It was there said by my Brother Marshall, that "the whole subject of granting or refusing interlocutory injunctions rests in the sound discretion of the court." And in a later case, speaking for the court, he said that "it is only where it is clear that temporary relief for the purpose indicated is essential, if all the equities of the complaint are denied under oath, that judicial discretion is liable to be abused by not granting it on such terms

as will adequately protect the defendant from serious injury or inconvenience if the court shall finally decide that the plaintiff is not entitled to the relief demanded in the complaint." *Chicago & N. W. R. Co. v. Langlade Co.* 104 Wis. 374, 375, 80 N. W. 599. See, also, *Ward v. Sweeney,* 106 Wis. 44, 50, 60, 82 N. W. 169; *Milwaukee E. R. & L. Co. v. Bradley,* 108 Wis. 468, 486, 84 N. W. 877. In this last case it is said by the same justice that:

"Notwithstanding the conflict between complaint and answer as to the facts or the law, it is still within the discretionary power of the court, by a temporary injunction, to preserve the *status quo* between the parties pending the final decree and to prevent the doing of the acts complained of during such pendency if that be necessary to save the plaintiff or the defendant from irreparable injury by the conduct of his adversary in the meantime. . . . The situation of the respective parties should receive careful consideration."

In another of the cases cited it was said that:

"If a person, on the facts alleged, be clearly entitled to a particular remedy, and there be reasonable ground to apprehend the facts may be established by proof, and, without a temporary restraining order preserving the *status quo* till the termination of the litigation, the purpose of the action will be entirely defeated, such temporary restraint should be applied under such circumstances as to reasonably protect all parties to the litigation." *Ward v. Sweeney,* 106 Wis. 60, 82 N. W. 174.

These excerpts would seem to be sufficient to indicate the rule which should govern in the granting or refusing of a preliminary injunction.

The complaint alleges that *"Von Spreckelsen* has not sufficient pecuniary resources to respond to any judgment for damages for breach of such contract" with the plaintiff, and that, unless the defendants are restrained from carrying out the conspiracy, the plaintiff will be without remedy, and will suffer great and irreparable damage. In that connection it may be observed that there is no allegation as to the insolv-

ency of any of the other defendants, and the wrongful and unlawful acts alleged as to such other defendants may perhaps be sufficient to bring the case within the ruling of the Queen's Bench in a case cited by the plaintiff's counsel, wherein it was held that an action at law "lies for maliciously procuring a breach of contract to give exclusive personal services for a time certain, equally whether the employment has commenced or is only *in fieri,* provided the procurement be during the subsistence of the contract and produces damage, and that, to sustain such an action, it is not necessary that the employer and employed should stand in the strict relation of master and servant." *Lumley v. Gye,* 2 Ellis & Bl. 216; *Walker v. Cronin,* 107 Mass. 555. But see *Boyson v. Thorn,* 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233.

The real purpose of this action is to restrain *Von Spreckelsen* from quitting the service of the plaintiff, in whose employ he had been for ten years, in violation of his contract; and to restrain the other defendants from employing *Von Spreckelsen,* with the skill, knowledge, and secrets of the plaintiff's business acquired by him during such ten years' services, to use the same for the benefit of the defendant corporation, and thus build up a rival business to the injury of the plaintiff. The question as to how far a court of equity may properly go in restraining a person from quitting the employment of one person and entering that of another has been the subject of much controversy. It is conceded by counsel for the plaintiff that courts of equity have always refused to enforce specific performance of contracts for personal services, and that this arises from the inherent weakness and inability of the court to enforce its decrees in such a case. The general rule undoubtedly is that equity will not restrain an employee from quitting the service of his employer in violation of his contract. *Fothergill v. Rowland,* L. R. 17 Eq. Cas. 132. Thus is it held by the United States circuit court of appeals for this circuit, in a case cited by counsel for the plaintiff, that

"equity will not enjoin employees of a receiver of a railroad from quitting his service, although the effect of such action will be to cripple the property or prevent or hinder the operation of the road." *Arthur v. Oakes,* 25 L. R. A. 414, 425, 63 Fed. 310, reversing *Farmers' L. & T. Co. v. N. P. R. Co.* 60 Fed. 803. But there are numerous exceptions to such general rule. In the case last cited it is conceded by Mr. Justice HARLAN, speaking for the court, that "courts of equity have sometimes sought to sustain a contract for services requiring special knowledge or peculiar skill, by enjoining acts or conduct that would constitute a breach of such contract. To this class belong the cases of singers, actors, or musicians who, after agreeing for a valuable consideration to give their professional service at a named place and during a specified time for the benefit of certain parties, refused to meet their engagement and undertake to appear during the same period for the benefit of other parties at other places"; citing the leading case of *Lumley v. Wagner,* 1 De Gex, M. & G. 604. For numerous cases coming within the general rule or the exceptions, see 27 Cent. Dig. 1706–1710, §§ 117, 118. So it has been held in Massachusetts that the "inventor or discoverer of secret process of manufacture, whether patentable or not, has property therein which equity will protect against one who, in violation of contract and breach of confidence, undertakes to apply it to his own use or to disclose it to third persons, and as against third persons having notice of such relations, although he may not have an exclusive right to it as against the public, or against those who in good faith acquire knowledge of it." *Peabody v. Norfolk,* 98 Mass. 452, 96 Am. Dec. 664. So it has been held in New Jersey that "an injunction may be allowed to restrain defendants, who were lately employed by complainant, from using in their own factory, or divulging to other persons, certain secrets used by complainant in manufacturing, which they, in consideration of their employment by complainant, had agreed not to di-

vulge; and such injunction should be retained until the final hearing, although all the facts alleged in the bill are denied in the answer." *Salomon v. Hertz,* 40 N. J. Eq. 400, 2 Atl. 379. To a similar effect, *Fralich v. Despar,* 165 Pa. St. 24, 30 Atl. 521; *Tabor v. Hoffman,* 118 N. Y. 30, 23 N. E. 12; *National G. & M. Co. v. Braendly,* 27 App. Div. (N. Y.) 219, 51 N. Y. Supp. 93; *Harrison v. Glucose S. R. Co.* 116 Fed. 304; *Cort v. Lassard,* 18 Oreg. 221, 6 L. R. A. 653, and note.

It is sought to bring the case within this line of decisions, and if it were to be determined upon the allegations of the complaint and the mere denials in the answer, it would probably be successful. But, as more fully set forth in the statement of facts, *Von Spreckelsen* states on oath that, long prior to the time when he entered the employment of the plaintiff, he was employed as foreman of the pattern and machine department of the Ewart Manufacturing Company of Indianapolis, the originator and founder and first manufacturer of chain belt and chain links, such as the plaintiff now makes, and that the Ewart Manufacturing Company is now the largest manufacturer of such products in the world; that while so employed by the Ewart Company he acquired his knowledge, experience, and skill in the making of all records, drawings, designs, gauges, prints, patterns, and models pertaining to the manufacture of chain belt and chain links, and the reproduction thereof, and of the methods of such manufacture, and the disposition, sale, and shipment of such products, which knowledge he brought with him when he entered the employment of the plaintiff, and that he freely and fully gave to the plaintiff the benefit and advantage thereof, and which knowledge and skill are possessed by many other men engaged in the same line of business; and that his assistant while in the employ of the plaintiff, and who is still in the plaintiff's employ, and is performing for the plaintiff the services formerly rendered by *Von Spreckelsen,* is capable of discharging the duties of that position, with the aid of the

records, designs, drawings, prints, gauges, patterns, and models which had been prepared by *Von Spreckelsen* or under his directions, all of which are now in the plaintiff's possession. Such statements are emphasized by denials and further allegations in other parts of the answer. If they are true, *Von Spreckelsen* has no secrets or secret respecting the plaintiff's business, and no peculiar skill not possessed by others, some of whom are now in the employ of the plaintiff. If they are not true, it would have been a very easy matter to show it. No attempt has been made to dispute or disprove such statements. They must be accepted, therefore, as verities in the case. In view of such admitted facts, was it an abuse of discretion to dissolve the preliminary injunction?

In *Wm. Rogers Mfg. Co. v. Rogers,* 58 Conn. 356, 20 Atl. 467, 7 L. R. A. 779, 781, 782, the complaint alleged, in effect, that the defendant had agreed to serve the company for the period of twenty-five years, if he lived so long, at a salary named, as general agent and manager, and to give his entire time and service to the business of the company, and not to engage or allow his name to be employed, in any manner, in any other similar business, but in violation of his agreement he conspired with others to form a new corporation to enter upon a similar business to the injury of the plaintiff. The trial court sustained a demurrer to the complaint, and rendered judgment thereon, refusing to enjoin the defendant from leaving the employment of the plaintiff or engaging in other business in violation of his contract; and the same was affirmed by the supreme court, where it was held that "contracts for personal services will not be specifically enforced in equity. The negative enforcement of a contract for personal services by an injunction will not be made where the services are not purely intellectual, peculiar, or individual in their character." So in a case in New York the court reversed an order continuing a preliminary injunction "to restrain defendant from working for a certain firm, or for any

other person or corporation, as a lithographic designer or lithographic sketch artist, in violation of a contract of employment by plaintiff. It appeared that much of the work for which he was employed by the plaintiff was purely mechanical, and that there was nothing uncommon in his qualifications. There was no proof that his place could not be adequately supplied, and none of damage or actual injury." *Strobridge L. Co. v. Crane,* 12 N. Y. Supp. 898. So in another case in the same state a judgment was affirmed which refused to restrain defendant from giving his services to a rival newspaper in violation of his contract with the plaintiff, with which he had long been connected, and was familiar with its methods—particularly in the advertising department—on the ground that the services rendered were not so unique and extraordinary that they could not be performed by a substitute; that, although they had been performed by a substitute at a loss, yet it was not a proper case for an injunction. *W. J. Johnston Co. v. Hunt,* 66 Hun, 504, 21 N. Y. Supp. 314, affirmed in 142 N. Y. 621, 37 N. E. 564. So it is held in Georgia that "unless personal services are individual and peculiar, because of their special merit or unique character, a negative covenant (even when express) not to render them to others than the plaintiff, will not be enforced by injunction." *Burney v. Ryle & Co.* 91 Ga. 701, 17 S. E. 986. See, also, *Whilwood Chemical Co. v. Hardman* [1891] 2 Ch. 416.

Applying the principles of law embodied in these cases to the admitted facts in the case at bar, and it is obvious that the plaintiff is not entitled to an injunction, unless upon the final hearing it produces proof not suggested in the record before us. We are unable to say that there was any abuse of discretion in dissolving the preliminary injunction.

*By the Court.*—The order of the circuit court is affirmed.