EUREKA LAUNDRY COMPANY, Appellant, vs. LONG, Respondent.

*April 7—May 2, 1911.*

*Contracts: Validity: Master and servant: Restrictive covenants: Restraint of trade: Equity: Injunction.*

1. In a contract for the employment of defendant as driver of a laundry wagon for plaintiff over a specified route in the city of Milwaukee, a stipulation to the effect that defendant will not during such employment nor for two years thereafter solicit laundry trade from any of plaintiff's customers supplied by him while so employed, nor engage directly or indirectly in the laundry business in that part of the city included in such route, is reasonable and valid.

2. Such restrictive covenants, if not otherwise contrary to public policy, must be held valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights and do not unreasonably restrict the right of the employee, due regard being had to the subject matter of the contract and the circumstances and conditions under which it is to be performed.

3. An action in equity will lie to restrain the breach of a restrictive agreement of this character, since an action at law would not furnish an adequate remedy.

4. The doctrine that negative enforcement by injunction of a contract for personal services will not be decreed unless the services belong to a class that may be termed "unique, peculiar, individual, or extraordinary," has no application to such a case, where the employer claims no damages by reason of the employee having left his employ and does not seek to retain such employee in his service.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

Suit in equity. On the 17th of April, 1909, the plaintiff and defendant entered into a contract for an indefinite period whereby the defendant for a consideration therein named agreed to drive a laundry wagon for the plaintiff on a specified route in the city of Milwaukee. The portion of the contract material to this case is as follows:

"The said party of the second part also agrees that he will not at any time while he is in the employ of the said party of the first part, or within two years after leaving its service, for himself or any other person, persons or company, call for and deliver laundried and unlaundried goods, to any person or persons who shall have been customers of said party of the first part, and supplied by said party of the second part during any time he may have been employed under this contract, nor will he in any way, directly or indirectly, solicit, divert, take away or attempt to solicit, divert or take away any of the custom, business or patronage of such customers within such two years, and said party of the second part further agrees that he will not at any time while he is in the employ of the said party of the first part, or within two years after leaving

its service, for himself or any other person, persons or company, engage in the laundry business, or call for and deliver any laundried or unlaundried goods, either directly or indirectly, in that portion of the city of Milwaukee, Wisconsin, known as Route B, between Lake Michigan, East and North Water streets, Wisconsin street and Keefe avenue (said portion of the city containing the laundry route or territory especially intrusted by said party of the first part to party of the second part).''

On September 10, 1910, defendant voluntarily left the ·employ of the plaintiff, and this suit is brought to restrain him from violating the portions of the contract set out above. A court commissioner issued an injunction restraining the defendant, until the further order of the court, from ''either ·for himself or any other person, persons or company, calling for or delivering laundried and unlaundried goods to any person or persons who shall have been customers of the plaintiff and as such supplied by the defendant during any time he was in the plaintiff's employment, and from in any way, directly or indirectly, soliciting, diverting, taking away from or attempting to solicit, divert or take away from any of the ·customs, business or patronage of the plaintiff's customers and from, for himself or any other person, persons or company, ·engaging in the laundry business and calling for or delivering laundried or unlaundried goods, either directly or indirectly, in that portion of the city of Milwaukee situated and bounded by Lake Michigan on the east, Wisconsin street on the south, East and North Water streets on the west, and Keefe avenue on the north.''   The trial court dissolved the injunction, and the plaintiff appealed.

For the appellant there was a brief by *Olwell & Drought,* attorneys, and *Rossiter Lines,* of counsel, and oral argument by *L. A. Olwell.*   They cited *Mitchel v. Reynolds,* 1 P. Wms. 181; *Horner v. Graves,* 7 Bing. 735; *Gibbs v. Consolidated ·Gas Co.* 130 U. S. 396; *Oregon Steam Nav. Co. v. Winsor,* 20 Wall. 64; *Harrison v. Glucose S. R. Co.* 116 Fed. 304;

*Anchor E. Co. v. Hawkes,* 171 Mass. 101; *Myers v. Steel M. Co.* 67 N. J. Eq. 300; *McCall Co. v. Wright,* 133 App. Div. 62, 117 N. Y. Supp. 775; and other cases.

For the respondent there was a brief by *John S. Kaney* and *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill.*

VINJE, J.     The first question raised by the appeal is the validity of the portion of the contract set out in the foregoing statement of facts wherein the defendant agrees, during the term of his employment and for two years thereafter, not to solicit laundry trade from any customers of the plaintiff who have been supplied by him during his employment, and that he will not, during such employment and for two years thereafter, either directly or indirectly engage in the laundry business in that part of Milwaukee known as Route B.     Were this a case where the defendant had sold plaintiff the laundry business and had made the covenants above referred to, no question as to the validity of the contract would arise under the decisions of our own state.     *Cottington v. Swan,* 128 Wis. 321, 107 N. W. 336; *My Laundry Co. v. Schmeling,* 129 Wis. 597, 109 N. W. 540, and cases cited on page 606.     It meets all the requirements of the rule laid down in *Tecktonius v. Scott,* 110 Wis. 441, 86 N. W. 672, to the effect that such contracts, in order to be valid, must be limited as to time, space and extent of trade, to what is reasonable under the circumstances of the case.     And it is much more limited as to time and space than the contract held valid in *Cottington v. Swan, supra.*

The question arises, Does it make any substantial difference whether the thing of value bargained for is contained in a contract of sale or in a contract of hiring?     If it is lawful and proper to protect a business *just about to be acquired* from certain acts by the seller who is familiar with such business, why is it not equally lawful and proper to protect an

Eureka Laundry Co. v. Long, 146 Wis. 205.

*established* business from such acts by one who has become familiar therewith? We perceive no difference in principle. The purchaser says to the seller: You are familiar with this business; you know your customers; your personal acquaintance with them is such that you could divert their trade from me if you saw fit; now I will purchase your business upon the express condition that you will agree for a limited length of time not to engage in a like business in this locality; at the expiration of that time I shall know my business and my customers well enough to be able to protect myself. So the owner of an established business says to a prospective employee: In the employment you will become familiar with the customers of my business in a way that I cannot; you will meet them frequently while I see them rarely if ever; now I will hire you upon the express condition that you will agree for a limited length of time not to solicit trade from such of my customers as you may have supplied while in my employ, and will not engage in my business within a limited time in the territory you have occupied; at the end of that time my new employees will be sufficiently well acquainted with my customers to protect my business. Why is not one contract as valid as the other? Both are based upon valuable considerations. If it be said that the latter contract tends unreasonably to hamper employees in their quest for employment, the answer is: Whatever is reasonably necessary for the protection of a legitimate business promotes the best interests of the employees of that business. No doubt experience has shown that owners of a business like that of plaintiff need such protection in a large city, where the customers as a rule come in contact only with the employee, and that his personality and his acquaintance with them has much to do with the retention of their patronage. Freedom to contract must not be unreasonably abridged. Neither must the right to protect by reasonable restrictions that which a man by industry, skill, and good judgment has built up, be denied. If the restrictions

are not otherwise contrary to public policy they must be held to be valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights, and do not unreasonably restrict the rights of the employee, due regard being had to the subject matter of the contract and the circumstances and conditions under which it is to be performed. *My Laundry Co. v. Schmeling,* 129 Wis. 597, 109 N. W. 540; *Gibbs v. Consolidated Gas Co.* 130 U. S. 396, 9 Sup. Ct. 557; *Anchor E. Co. v. Hawkes,* 171 Mass. 101, 50 N. E. 509; *Harrison v. Glucose S. R. Co.* 116 Fed. 304.

If the restrictive covenants of the contract are held valid, it is apparent that an action at law for their breach would no more furnish an adequate remedy than would an action at law for the breach of similar covenants in a contract for the sale of a business. That equity alone can furnish an adequate remedy in such cases is well settled. *My Laundry Co. v. Schmeling, supra.*

Counsel for respondent grounds his case upon the fact that negative enforcement by injunction of a contract for personal services will not be decreed unless the services belong to a class that may be called *unique, peculiar, individual,* or *extraordinary* and cites the following cases to sustain the proposition: *H. W. Gossard Co. v. Crosby,* 132 Iowa, 155, 109 N. W. 483; *Chain Belt Co. v. Von Spreckelsen,* 117 Wis. 106, 94 N. W. 78; *Wm. Rogers Mfg. Co. v. Rogers,* 58 Conn. 356, 20 Atl. 467; *Strobridge L. Co. v. Crane,* 12 N. Y. Supp. 898; *Burney v. Ryle & Co.* 91 Ga. 701, 17 S. E. 986; *Osius v. Hinchman,* 150 Mich. 603, 114 N. W. 402; *Cort v. Lassard,* 18 Oreg. 221, 22 Pac. 1054.

In the case of *H. W. Gossard Co. v. Crosby,* 132 Iowa, 155, 109 N. W. 483, 6 L. R. A. N. S. 1115, the contract contained no negative covenants, and it was there sought to restrain the defendant, who had agreed to work for the plaintiff for a specified time, from entering into the same employment with

any one else, namely, that of demonstrating and selling front-lace corsets.

In the case of *Chain Belt Co. v. Von Spreckelsen,* 117 Wis. 106, 94 N. W. 78, it was held that there was no abuse of discretion in dissolving an injunctional order restraining an expert mechanic, under contract of employment with plaintiff, from entering into the service of another company. No negative covenants were contained in the contract of service, and it was not controverted that the defendant had acquired his knowledge and skill before he entered the employ of the plaintiff.

In *William Rogers Mfg. Co. v. Rogers.* 58 Conn. 356, 20 Atl. 467, the court refused to enjoin defendant from leaving the employment of the plaintiff or engaging generally in other business in violation of his contract. In that case he had agreed not to engage, or allow his name to be employed in any manner, in any other or similar business, and the court very properly held that such a restriction was an unreasonable one.

In the case of *Strobridge L. Co. v. Crane,* 12 N. Y. Supp. 898, the court refused to restrain the defendant from working for another firm or for another person or corporation as a lithographic designer, it appearing that the purpose of the injunction was to retain the defendant in the employ of the plaintiff and there being no proof that his place could not be adequately supplied by someone else.

In *Burney v. Ryle & Co.* 91 Ga. 701, 17 S. E. 986, the court held that plaintiff was not entitled to an injunction restraining the defendant from working for others, even though the contract of employment contained a negative covenant, where it was apparent that plaintiff sought that remedy in order to receive the benefit of an affirmative covenant to serve him exclusively for a specified time, the services there not being individual or peculiar.

In the case of *Osius v. Hinchman,* 150 Mich. 603, 114 N.

W. 402, the court evidently treated the purpose of the injunction to be to retain the employee in the service of the plaintiff, for the court says:

"After eliminating the matter of trade secrets, the contract sought to be enforced is a contract of employment containing this negative agreement, requiring no special skill other than that which could be rendered by an ordinary dentist. A breach by an employee of such a contract will not be enjoined, for the reason that a substitute can be readily supplied and the remedy at law is adequate."

So that apparently was a case where the plaintiff sought by injunction to retain the defendant in its employ, or at best to protect himself from damages by reason of the defendant leaving his employment.

In *Cort v. Lassard*, 18 Oreg. 221, 22 Pac. 1054, 6 L. R. A. 653, the court refused to issue an injunction restraining the defendant, who was an ordinary acrobat, from entering the employment of others, though he had contracted to perform exclusively for the plaintiff for a certain length of time. The opinion went on the ground that the plaintiff could readily procure another acrobat to perform the services theretofore rendered by the defendant.

In all the cases above referred to the plaintiffs alleged damages to their businesses by reason of the fact that the defendants left their employ. We have no such case here. In this case it is not claimed that the plaintiff has in any way been damaged or injured by reason of the fact that defendant has left its employ, and no damages are sought on that account, nor is it sought, either directly or indirectly, to retain the defendant in the employ of the plaintiff as in many of the cases cited by respondent. On the contrary, the defendant is sought to be restrained from committing certain acts, after he has left the employment of the plaintiff, which will directly injure plaintiff's business, and which, in his contract of employment, he specifically agreed that he would not do. So it is appar-

ent that the cases cited by the respondent have no application to the case at bar. The trial court properly found that the services of the defendant in this case were ordinary services such as could be performed by any one. But this case presents no question as to the character or kind of service to be rendered. It does not lie in the mouth of the defendant to say that any one, whether skilled or unskilled, could cause similar damage to plaintiff's business after leaving its employ. He agreed not to cause such damage. The agreement was a reasonable and valid one, and a court of equity will enforce it.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.